IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WILBERT SOWELL, JR.,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 12-3371 |
| v. | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| Defendant.[1] | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**<u>ALTERNATIVE MOTION FOR REMAND</u>**

Wilbert Sowell, Jr. ("Plaintiff"), seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's "Motion for Order Reversing the Decision of the Commissioner," construed as a Motion for Summary Judgment or Alternative Motion for Remand (ECF No. 23), and Defendant's Motion for Summary Judgment (ECF No. 29).[2]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  She is, therefore, substituted as Defendant in this matter.  *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 23) is **GRANTED**.

# I

## Background

Plaintiff was born in 1965, has a high-school education, and previously worked as a truck driver.  R. at 34.  Plaintiff applied for DIB on February 18, 2009, alleging disability beginning on October 5, 2007, due to fluid in his right knee.  R. at 28, 106-09, 120.  The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 68-76, 80-81.  On May 9, 2011, ALJ C.J. Sturek held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 40-67.  On May 20, 2011, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of October 5, 2007.  R. at 25-39.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on September 7, 2012.  R. at 6-11, 22-24.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On November 16, 2012, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.   **State Agency Medical Consultants**

On May 6, 2009, P.H. Moore, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 280-87. Dr. Moore opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 281. Plaintiff occasionally could kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. R. at 282. He frequently could balance, stoop, and climb ramps and stairs. R. at 282. Plaintiff had no manipulative, visual, communicative, or environmental limitations, however. R. at 283-84.

On December 22, 2009, another state agency medical consultant, J. Johnston, M.D., also assessed Plaintiff's physical RFC. R. at 306-13. Dr. Johnston opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 307. Although Dr. Johnston also opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations, the doctor determined that Plaintiff occasionally could balance, stoop, crouch, and climb ramps and stairs, but never could kneel, crawl, or climb ladders, ropes, or scaffolds. R. at 308-10.

B.    **Hearing Testimony**

    1.    **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony:

> During the hearing, [Plaintiff] testified to his various limitations associated with his physical challenges. [Plaintiff] stated that he has a car and only drives when there is an emergency. He has problems driving more than thirty minutes. He stated that he drove himself to the hearing. He has psoriatic arthritis. He stated that his right hip flares up two-to-three times a month, with pain for three-to-four days. His right shoulder is sore and worsens with activity, such as holding a mobile phone too long. He stated that the medication eases the pain, but does not eliminate it.

R. at 33; *see* R. at 43-61.

    2.    **VE Testimony**

According to the VE, Plaintiff's past work as a delivery driver is unskilled and heavy.[3] R. at 50-51. A hypothetical person of Plaintiff's same age, education, and work experience with the ALJ's RFC assessment as stated below could work as a security worker or table worker. R. at 62-64. If Plaintiff's testimony were credible, however, he could not maintain any work. R. at 65.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below. *See infra* Part VI.

### III

### Summary of ALJ's Decision

On May 20, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of October 5, 2007; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in

---

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a security worker or table worker. R. at 30-35. The ALJ accordingly found that he was not disabled from October 5, 2007, through the date of the decision. R. at 35.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform sedentary work, as defined in 20 CFR 404.1567(a), except that [Plaintiff] can only occasionally balance, bend, stoop, crouch, and squat. He can never kneel or crawl. He should avoid concentrated exposure to hazards such as moving machinery or unprotected heights. He has a moderate limitation in the ability to concentrate, maintain attention for extended periods, and keep up a pace, due to pain and effects of medication.

R. at 32 (footnote omitted).[4]  The ALJ considered Plaintiff's credibility and found that his "medically[]determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 33.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Among Plaintiff's various arguments is his contention that the ALJ erred in finding at step three of the sequential evaluation process that his impairments did not meet or medically equal Listing 1.02 in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (R. at 32). Pl.'s Mem. Supp. Mot. Summ. J. 19, ECF No. 23-1. For the reasons stated below, the Court agrees and remands this case for further proceedings.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual

support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*

Moreover, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986). "[T]he ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability." *Bruette v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1972, 2013 WL 2181192, at *4 (D. Md. May 17, 2013) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-5p).

Listing 1.02 provides:

*Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

    B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

"Inability to ambulate effectively" is defined as follows:

    *b. What We Mean by Inability To Ambulate Effectively*

    (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

    (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

    The Commissioner concedes that Plaintiff indicated that he walked with a cane (R. at 56, 131, 180), but maintains that the ALJ acknowledged his difficulties with ambulation by limiting him to sedentary work and that an "inability to ambulate effectively" for purposes of Listing 1.02(A) requires the use of an assistive device or devices that limit the functioning of both upper extremities, such as using two canes. Def.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 29-1. The ALJ's finding at step three in his decision merely stated, however, that Plaintiff did not meet or

medically equal Listing 1.02 because the evidence of record did not satisfy the criteria of the listing. R. at 32. The ALJ made no specific finding regarding Plaintiff's inability to ambulate effectively or whether Plaintiff's use of only one cane precluded a finding of meeting Listing 1.02. *See* R. at 32.

The Commissioner's argument regarding the definition of "inability to ambulate effectively" thus is unavailing. The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). In other words, "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (reviewing court must judge propriety of agency action solely by grounds invoked by agency). In any event, "[w]hile using two canes is one example from the regulations of ineffective ambulation, walking with one cane on a daily basis is not presumptively effective ambulation under § 1.00(B)(2)." *Dunham v. Astrue*, 603 F. Supp. 2d 13, 19 (D.D.C. 2009) (citing *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 268 (D. Md. 2003)). "Notably, 'if [a claimant] who uses [only] one cane or one crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.'" *Fleming*, 284 F. Supp. 2d at 268 (alteration in original) (quoting Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58,013 (Nov. 19, 2001)). *But see Catterton v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-1056, 2013 WL 2470082, at *1 (D. Md. June 6, 2013) ("[A] single cane does not establish an inability to ambulate effectively.").

In light of Plaintiff's testimony that he drove, walked his dogs, cleaned his house, and prepared dinner, the Commissioner further contends that the evidence of record fails to demonstrate that Plaintiff's knee condition prevented him from independently carrying out his daily activities, but instead demonstrates that he can, in fact, ambulate effectively. Def.'s Mem. Supp. Mot. Summ. J. 17, ECF No. 29-1. Plaintiff testified, however, that he drove "in extreme emergencies" for no longer than 30 minutes. R. at 46. He walked his dogs by allowing them to run free "in the woods." R. at 128, 136. He could walk for only 15 to 30 minutes before needing to rest. R. at 138. Plaintiff further stated that he could not cook for longer than 15 minutes. R. at 176. While shopping, he used a shopping cart as a makeshift crutch. R. at 177. Plaintiff also testified that he walked up steps holding "onto the guardrail, one step at a time." R. at 55. Despite this evidence, the ALJ did not discuss whether Plaintiff's limited walking was at "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." In addition, although the ALJ stated in his decision that medication "significantly improved" his knee pain (R. at 33), Plaintiff also testified that the medication "brings [the pain] down but it doesn't take it all the way away" (R. at 52).

Although it is Plaintiff's burden to demonstrate that his impairment meets or equals a listed impairment, the ALJ's duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Accordingly, because the Court finds that the ALJ has not satisfied this duty, the Court **REMANDS** this case for the ALJ to do so. "Because the Court remands the matter on Listing [1.02], the Court need not address Plaintiff's remaining arguments." *Layman v. Astrue*, Civil Action No. TMD 10-2263, 2013 WL 363194, at *3 (D. Md. Jan. 29, 2013).

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 29) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 23) is **DENIED**.  Plaintiff's Alternative Motion for Remand (ECF No. 23) is **GRANTED**.  A separate order shall issue.


Date: September 19, 2014                                          /s/
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge